1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10   JEFFERY L. FISHER,

11              Plaintiff,                    No. 2:10-cv-2311-KJM-DAD P

12        vs.

13   BRYANT, et al.,

14              Defendants.          FINDINGS & RECOMMENDATIONS

15   _____/

16        Plaintiff is a state prisoner proceeding pro se with a civil rights complaint

17   pursuant to 42 U.S.C. § 1983.  Before the court is a motion for summary judgment brought on

18   behalf of defendant Bryant.  Plaintiff has filed an opposition and defendant has filed a reply.

19                        **PLAINTIFF'S COMPLAINT**

20        Plaintiff's statement of claim as it appears in his complaint states, in its entirety,

21   as follows:

22            On Mon. June 14th 2010 @ approx. 11:30am [sic] while being
              served my hot lunch by officer Bryant (badge #J-68) who
23            attempted to give me a milk, which I tried to give back as I don't
              drink milk.  [sic]  He then slammed my left index finger in the food
24            port.  I then pushed my emergency button and Officer George
              (trainee) (badge # unknown @ this time) and Officer J. Young
25            (badge # J-48) (trainer) asked me what my emergency was and I
              told them I needed to see medical because my finger was just
26            slammed in the food port and I was bleeding.  At approx. 11:45am

1

[sic] while trays were being picked up officer, [sic] Bryant (badge#J-68) was making a joke about the incident.  I spoke with Mrs. Parker the decree attorney and sergeant Young (badge # unknown @ this time), I was then seen by medical.  On Tues. June 15 [sic] 2010, I saw the Dr. who ordered x-rays and told me that my finger was broke.  I spoke with Mrs. Parker and she told me that I needed to quote these codes in my grievance [sic] <u>8th AMENDMENT (CRUEL AND UNUSUAL PUNISHMENT0 AND (A.TITLE15 [sic] AND CA. CIVIL CODE 1714a NEGLIGENCE).</u>  [emphasis in original document]  It took approx. 2 days to receive any kind of medicine for pain.  As of yet I still have not seen the Dr. for the follow-up concerning my broken finger.  I had x-rays done on 6-18-2010 and I'm still waiting to get the results from the Dr.

(Doc. No. 1 at 4.)  The incident described by plaintiff in his complaint allegedly occurred while he was incarcerated at Butte County Jail.  However, the complaint did not contain any allegation with respect to whether plaintiff was incarcerated at the Butte County Jail at the time of the alleged incident as a pretrial detainee, a convicted prisoner or on some other basis.  In terms of relief, plaintiff sought $250,000 in actual and punitive damages and a court order requiring that defendant Bryant be prosecuted for assault.

Pursuant to the court's April 7, 2011 order, this action is proceeding solely against defendant deputy Bryant on the claim that he allegedly used excessive force on plaintiff as well as on a state law claim of negligence.  (Doc. No. 11 at 2.)[1]

---

[1]  At screening, the court determined that the allegations of plaintiff's complaint were insufficient to state a cognizable claim for excessive use of force against named defendants Young, George, Louderback and Butte County.  (<u>Id.</u>)  The court also determined that plaintiff had not set forth sufficient factual allegations to state a cognizable claim that he had been provided constitutionally inadequate medical care in that his complaint failed to allege that any of the named defendants delayed his medical treatment in violation of the Eighth Amendment.  (<u>Id.</u> at 2 n.1.)  Because the precise nature of plaintiff's confinement was not clear from the complaint, the court also advised plaintiff that the Eighth Amendment protects persons who have been convicted of a crime and that if the incident at issue here occurred prior to him suffering a conviction, he should instead proceed under either the Fourth and Fourteenth Amendments with respect to his excessive use of force claim.  (<u>Id.</u>)  Plaintiff was also advised that if he was pursuing an excessive force claim under the protection afforded either under the Fourth and Fourteenth Amendment, he should immediately file an amended complaint and clarify the constitutional basis for his claim.  (<u>Id.</u>)  Nonetheless, plaintiff has never sought leave of court to file an amended complaint.

**PARTIES' ARGUMENTS**

I.  Defendant Bryant's Motion for Summary Judgment

    A.  Excessive Use of Force Claim

         Defendant Bryant contends that he did not intentionally shut the hatch door on plaintiff's finger and that the incident was nothing more than an unfortunate accident.  (Doc. 25-1 at 6-7.)  Defendant Bryant has submitted his own declaration in which he states as follows.  On June 14, 2010, shortly before noon, he was serving lunch to prisoners in the maximum security A-pod single cells.  (Doc. No. 25-2, ¶¶ 5-6 at 2.)  He opened the food tray port hatch and passed a food tray and a carton of milk to plaintiff.  (Id. ¶ 7 at 2.)  Plaintiff took the food tray and while defendant Bryant looked through the door window at plaintiff's face, the hatch door was closed.  (Id.)  Defendant Bryant contends that plaintiff did not say anything to him and that he did not see plaintiff attempting to hand anything back to him through the hatch door.  (Id.)  Defendant Bryant also declares that he does not recall that there was any difficulty closing the hatch door or any obstruction to the hatch door shutting normally.  (Id. ¶¶ 7-8 at 2-3.)  Furthermore, defendant Bryant asserts that plaintiff did not say anything to him at the time and did not express any pain or frustration.  (Id. ¶ 9 at 3.)  Lastly, defendant Bryant states that he did not intentionally close the hatch door on plaintiff's finger and repeats his contention that plaintiff did not complain about being injured at the time.  (Id. ¶ 10 at 3.)

         Defendant Bryant has attached to his declaration a copy of the jail incident report documenting the June 14, 2010 incident.  (Id. at 7.)  That report explains that on the day of the incident at approximately 4:36 p.m., plaintiff's index finger was assessed by RN Hickerson and it was merely noted that the tip of plaintiff's finger was "slightly red and bruised."  (Id.)  The report also indicates that Nurse Hickerson advised plaintiff that ice should be applied to the finger for any swelling that might occur.  (Id.)

         Defense counsel argues that the undisputed facts before this court establish that defendant Bryant did not violate plaintiff's constitutional rights under the Eighth Amendment

standard which is applicable in evaluating an excessive use of force claim under the Fourteenth

Amendment . (Id.)  According to defense counsel, that standard requires plaintiff to establish

defendant Bryant was aware that plaintiff faced a substantial risk of serious harm and disregarded

that risk.  (Id.)  Furthermore, defense counsel contends, mere negligence is not sufficient to

establish a constitutional violation.  (Id.)  Defense counsel also argues that the undisputed

evidence before this court establishes that defendant Bryant did not see plaintiff hand anything

back through the hatch door, that plaintiff's hand never passed the plane of the open hatch, and

that defendant Bryant had no reason to believe that plaintiff was handing anything back through

the hatch door when it was shut.  (Id. at 8.)  Therefore, defense counsel argues, defendant Bryant

was unaware of facts from which he could infer that plaintiff was at any risk of harm and that

defendant Bryant did not act with deliberate indifference towards plaintiff.  (Id.)

B.  Qualified Immunity

Next, defense counsel argues that defendant Bryant is entitled to qualified

immunity because plaintiff cannot demonstrate that at the time of the incident at issue, "there was

any authority that clearly established a constitutional violation caused by the accidental closing of

a food port hatch doorway onto the finger of a jail inmate."  (Id. at 10.)

C.  State Law Negligence Claim

Finally, defense counsel argues that defendant Bryant is entitled to summary

judgment in his favor with respect to any claim of negligence based on state law because plaintiff

failed to comply with the California Government Tort Claims Act and because no jury could find

that defendant Bryant breached any duty of reasonable care owed to plaintiff based upon the

undisputed facts.  (Id.)[2]  Counsel argues that no reasonable jury could conclude that defendant

Bryant was negligent based upon the evidence before the court and that defendant Bryant is

---

[2]  With respect to the Government Tort Claims Act, defense counsel argues that plaintiff was required to file a claim with the County of Butte, that he failed to do so and that the time for curing this defect has now passed.  (Id. at 11.)

1  therefore entitled to summary judgment in his favor with respect to any state law negligence

2  claim.  (Id. at 13.)

3  II.  Plaintiff's Opposition

4           In his opposition, plaintiff refers to specific sections of defendant's motion and

5  offers the following counter-arguments.

6           Plaintiff asserts that he "routinely does not drink milk" and when he attempted to

7  return the milk through the hatch door, he "assumes that the defendant would have looked down

8  to retrieve the milk back from plaintiff, so to notice either plaintiff's hand or the milk being

9  returned to him."  (Doc. No. 28 at 2 "Point Two" and "Point Three.")

10          Plaintiff does not dispute that defendant Bryant was making eye contact with him

11 and not looking at the door hatch; however, plaintiff argues that this was at least "unexcusable

12 [sic] neglect" on defendant Bryant's part  (Id. at 2-3 "Point Four.")  Plaintiff does dispute,

13 however, that he said nothing as defendant Bryant closed the hatch door on his finger.  (Id. at 3

14 "Point Five.")  Rather, he contends that he told defendant thereafter Bryant that the door had

15 closed on his finger and that it hurt.  (Id.)  Plaintiff also argues that "defendant may not have

16 intentionally closed the door on his finger, but . . . defendant['s failure] to make sure there was

17 no obstruction present prior to closing the hatch door constitutes neglect on his part."  (Id.)

18          For the first time, in his opposition to the pending motion for summary judgment

19 plaintiff asserts that at the time of the alleged incident he was a civil detainee being held at the

20 Butte County Jail under California's Sexually Violent Predators Act (SVPA), Welfare &

21 Institutions Code § 6600, et seq.  (Doc. No. 28 at 4 "Point Eight.")  Plaintiff argues that because

22 he was a civil detainee at the time of this incident, he is entitled to greater protection from the

23 excessive use of force under the Fourteenth Amendment than that afforded to a convicted

24 prisoner under the Eighth Amendment.  (Id.)

25          As to defendant Bryant's contention that he did not see plaintiff handing the milk

26 back to him through the hatch door and defendant's failure to mention that plaintiff had refused

5

milk on other occasions, plaintiff argues that "there may not have been any malicious or sadistic intent on the part of defendant, but [plaintiff] does claim that this standard is not necessarily applicable to plaintiff." (Id. at 5 "Point Nine.")  Plaintiff contends that the legal standard applicable here is whether defendant Bryant's conduct was "wanton or reckless regarding the infliction of harm." (Id. at 5 "Point Ten.")  Plaintiff argues that defendant Bryant was "reckless" by "not making sure that plaintiff had nothing obstructing the closure of the food port door." (Id.)  Plaintiff also asserts that defendant Bryant's conduct in this case constituted more than mere negligence. (Id. at 6 "Point Eleven.")

Plaintiff contends that defendant Bryant is not entitled to qualified immunity. (Id. at 6 "Point Thirteen.")  He also argues that the California Government Tort Claims Act, does not apply here because:  (1) he is seeking a remedy for personal injury, (2) he was not informed by the jail that he was required to file a claim with the Butte County Board of Supervisors, and (3) he is proceeding without counsel. (Id. at 6-7 "Point Fourteen.")  In opposing the argument that under the undisputed facts of this case no reasonable jury could find that defendant Bryant breached a duty of reasonable care, plaintiff argues that defendant Bryant was reckless and negligent and that no reasonable jury would conclude that his conduct was justified. (Id. at 8 "Point Sixteen.")  Finally, plaintiff contends that after the incident, he "immediately began pressing his emergency button in his cell requesting medical assistance for the injury." (Id. at 8 "Point Seventeen.")[3]

Plaintiff has attached to his opposition, an inmate grievance form concerning both the incident and the medical care he received thereafter, as well as a response to that grievance in which prison officials indicated that the matter was under investigation. (Doc. No. 28 at 10-11.) However, plaintiff has offered no other evidence in opposition to defendant Bryant's motion for summary judgment.

---

[3]  Plaintiff also requests that the court reconsider its decision denying him  the appointment of counsel. (Id. at 8-9 "Point Eighteen.")

III.  Defendant's Reply

Defendant Bryant points out that plaintiff has failed to file a separate pleading in response to defendant's statement of undisputed material facts as required.  (Doc. No. 29 at 2.)  He also argues that pursuant to Local Rule 260(b), by failing to deny of the any of the undisputed material facts set forth in defendant's statement of undisputed facts, plaintiff should be deemed to have admitted each of those facts.  (Id. at 2-3.)

Counsel for defendant Bryant states that plaintiff appears to have conceded that defendant Bryant did not violate his rights under the Eighth Amendment.  (Id. at 3.)  Counsel points out that plaintiff suggests instead that his injury was caused by mere negligence on the part of defendant Bryant but notes that mere negligence does not give rise to a constitutional violation.  (Id.)  As to plaintiff's argument that the Eighth Amendment standard does not apply here, counsel for defendant Bryant notes that the court's screening order cautioned  plaintiff that his complaint was being construed as presenting an Eighth Amendment claim based upon an alleged excessive use of force and that if plaintiff sought to bring his claim under a different legal theory, he should immediately file an amended complaint to clarify his claims.  (Id.)  Because plaintiff thereafter did not seek leave to amend his complaint, defendant Bryant contends that summary judgment should be granted in his favor with respect to plaintiff's excessive use of force claim under the Eighth Amendment.  (Id.)

As to plaintiff's assertion that he is a civil detainee and that the Fourteenth Amendment therefore applies to the alleged conduct at issue, defendant Bryant argues that under either constitutional provision it is the deliberate indifference standard that applies to plaintiff's claim and that mere negligence is insufficient to establish a constitutional violation.  (Id. at 4.)  Furthermore, defendant Bryant argues that plaintiff's assertion that his conduct was "clearly reckless" is unsupported since the undisputed evidence establishes that he was unaware plaintiff was handing back his milk and that he was neither deliberately indifferent nor reckless in closing the hatch door.  (Id. at 5.)  Defendant Bryant concludes that the injury to plaintiff's finger was

1   merely an unfortunate accident, but not an act committed in violation of plaintiff's constitutional

2   rights.  (Id.)  He also reasserts that he is entitled to qualified immunity.  (Id. at 5-6.)

3          As to the state law negligence claim, counsel for defendant Bryant contends that

4   plaintiff has admittedly failed to comply with the Government Tort Claims Act and his

5   arguments that the requirements of the Act do not apply here are without merit.  (Id. at 6-7.)

6   Finally, defendant Bryant reasserts that he breached no duty of reasonable care owed to plaintiff

7   here.  (Id. at 7-8.)  Defense counsel argues that plaintiff has now come forward with new factual

8   allegations claiming that defendant Bryant was aware that plaintiff did not drink milk and that

9   plaintiff assumed defendant Bryant would have looked down to retrieve the milk.  (Id. at 8.)

10  Counsel argues that plaintiff has provided no evidentiary support for these new allegations and

11  notes that plaintiff does not cite to his deposition testimony, documentary evidence or a

12  declaration in support of this new factual allegation.  (Id.)  On the other hand, defendant Bryant

13  notes that he has submitted a sworn declaration asserting that plaintiff did not say anything to

14  him about returning the milk, that defendant had no reason to anticipate that plaintiff would

15  return the milk and that he does not recall plaintiff returning his milk on prior occasions.  (Id.)

16  Based on this undisputed evidence, defendant Bryant argues that no reasonable jury could

17  conclude that he breached any duty of reasonable care owed to plaintiff.  (Id. at 9.)

## SUMMARY JUDGMENT STANDARDS UNDER RULE 56

19         Summary judgment is appropriate when it is demonstrated that there exists "no

20  genuine issue as to any material fact and that the moving party is entitled to a judgment as a

21  matter of law."  Fed. R. Civ. P. 56(c).

22         Under summary judgment practice, the moving party

23              always bears the initial responsibility of informing the district court
                of the basis for its motion, and identifying those portions of "the
24              pleadings, depositions, answers to interrogatories, and admissions
                on file, together with the affidavits, if any," which it believes
25              demonstrate the absence of a genuine issue of material fact.

26  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[W]here the

nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary

judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers

to interrogatories, and admissions on file.'" Id.  Indeed, summary judgment should be entered,

after adequate time for discovery and upon motion, against a party who fails to make a showing

sufficient to establish the existence of an element essential to that party's case, and on which that

party will bear the burden of proof at trial.  See id. at 322.  "[A] complete failure of proof

concerning an essential element of the nonmoving party's case necessarily renders all other facts

immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so long as

whatever is before the district court demonstrates that the standard for entry of summary

judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

 If the moving party meets its initial responsibility, the burden then shifts to the

opposing party to establish that a genuine issue as to any material fact actually does exist.  See

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to

establish the existence of this factual dispute, the opposing party may not rely upon the

allegations or denials of its pleadings but is required to tender evidence of specific facts in the

form of affidavits, and/or admissible discovery material, in support of its contention that the

dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party

must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

(1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433,

1436 (9th Cir. 1987).

 In the endeavor to establish the existence of a factual dispute, the opposing party

need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson, 477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

On June 6, 2011, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988). On February 24, 2012, defendant Bryant filed and served the motion for summary judgment now pending before this court.  Several months after the pending motion was filed, and after briefing was complete, the Ninth Circuit Court of Appeals held that in order for pro se prisoner plaintiffs to have fair, timely and adequate notice of what is required of them in opposing a motion for summary judgment, the notice required by Rand  must be provided at the time the defendants' motion is filed.  Woods v. Carey, 684 F.3d 934, ___, 2012 WL 2626912, at *5 (9th Cir. July 6, /////

1   2012).[4]  Therefore, if plaintiff wishes to contend that the court's June 6, 2011 Rand notice was

2   rendered inadequate for purposes of opposing the present motion, because it was lost or

3   inaccessible to him at the time he prepared his opposition, he is directed to explain in his

4   objections to these findings and recommendations what evidence he failed to submit with his

5   opposition to defendant's motion for summary judgment and how that evidence would preclude

6   the granting of the pending motion.  See Woods, 2012 WL 2626912, at *5

7                              **OTHER APPLICABLE LEGAL STANDARDS**

8   I.  Civil Rights Action Pursuant to 42 U.S.C. § 1983

9           The Civil Rights Act under which this action was filed provides as follows:

10          Every person who, under color of [state law] . . . subjects, or causes
            to be subjected, any citizen of the United States . . . to the
11          deprivation of any rights, privileges, or immunities secured by the

12  _____

13          [4]  Pursuant to Woods v. Carey, 684 F.3d 934, 2012 WL 2626912 (9th Cir. 2012), Rand v.
    Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc) and Klingele v. Eikenberry, 849 F.2d 409
14  (9th Cir. 1988), plaintiff will again be informed of the requirements for opposing a motion for
    summary judgment pursuant to Fed. R. Civ. P. 56 and should consider these requirements in
15  preparing any objections he may elect to file to these findings and recommendations.  A motion
    for summary judgment is a request for an order for judgment in favor of the defendant without
16  trial.  A defendant's motion for summary judgment will set forth the facts that the defendant
    contends are not reasonably subject to dispute and that entitle the defendant to judgment.  To
17  oppose a motion for summary judgment, plaintiff must show proof of his or her claims.  Plaintiff
    may do this in one or more of the following ways.  Plaintiff may rely on plaintiff's statements
18  made under penalty of perjury in the complaint if the complaint shows that plaintiff has personal
    knowledge of the matters stated and plaintiff specifies those parts of the complaint on which
19  plaintiff relies.  Plaintiff may serve and file one or more affidavits or declarations setting forth
    the facts that plaintiff believes prove plaintiff's claims; the person who signs an affidavit or
20  declaration must have personal knowledge of the facts stated.  Plaintiff may rely on written
    records, but plaintiff must prove that the records are what plaintiff asserts they are.  Plaintiff may
21  rely on all or any part of the transcript of one or more depositions, answers to interrogatories, or
    admissions obtained in this proceeding.  If plaintiff fails to contradict the defendant's evidence
22  with counteraffidavits or other admissible evidence, the court may accept defendant's evidence
    as true and grant the motion.  If there is some good reason why such facts are not available to
23  plaintiff when required to oppose a motion for summary judgment, the court will consider a
    request to postpone consideration of the defendant's motion.  See Fed. R. Civ. P. 56(d).  If
24  plaintiff does not serve and file a written opposition to the motion, or a request to postpone
    consideration of the motion, the court may consider the failure to act as a waiver of opposition to
25  the defendant's motion.  See L.R. 230(l).  If the court grants the motion for summary judgment,
    whether opposed or unopposed, judgment will be entered for the defendant without a trial and the
26  case will be closed as to that defendant.

                                              11

1                          Constitution . . . shall be liable to the party injured in an action at
law, suit in equity, or other proper proceeding for redress.

2

3  42 U.S.C. § 1983.  The statute requires that there be an actual connection or link between the

4  actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  See

5  Monell v. Department of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362

6  (1976).  "A person 'subjects' another to the deprivation of a constitutional right, within the

7  meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or

8  omits to perform an act which he is legally required to do that causes the deprivation of which

9  complaint is made."  Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

10            Moreover, supervisory personnel are generally not liable under § 1983 for the

11  actions of their employees under a theory of respondeat superior and, therefore, when a named

12  defendant holds a supervisorial position, the causal link between him and the claimed

13  constitutional violation must be specifically alleged.  See Fayle v. Stapley, 607 F.2d 858, 862

14  (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978).  Vague and conclusory

15  allegations concerning the involvement of official personnel in civil rights violations are not

16  sufficient.  See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

17  II.  Excessive Force Claim

18            Although the complaint before the court alleges, and the court's initial screening

19  order found, that plaintiff is proceeding on a claim that his rights under the Eighth Amendment

20  were violated by the defendant's use of force upon him, it now appears clear that plaintiff was a

21  civil detainee at the time of the alleged incident.[5]  Although the Ninth Circuit has not directly

22  addressed the legal standard applicable to claims of the excessive use of force brought by civil

23  detainees, there is persuasive authority that such individuals are entitled to protection under the

24  Fourteenth Amendment.   Thus, in the context of a civil rights action brought by a civil detainee

25

26            [5]  It is noted that plaintiff has since notified the court that his current address is at the
Coalinga State Hospital.

while he was awaiting adjudication and commitment under the SVPA, the Ninth Circuit has

stated:

> Though it purported to analyze Jones's conditions of confinement claim under the Fourteenth Amendment, the district court actually applied the standards that govern a claim of cruel and unusual punishment under the Eighth Amendment. The court mistook the amendment that was to be applied.
>
> "[T]he more protective fourteenth amendment standard applies to conditions of confinement when detainees . . . have not been convicted" of a crime. Gary H. v. Hegstrom, 831 F.2d 1430, 1432 (9th Cir.1987) (citing Youngberg v. Romeo, 457 U.S. 307, 102 S. Ct. 2452, 73 L. Ed.2d 28 (1982) (civilly committed individuals), and Bell v. Wolfish, 441 U.S. 520, 99 S. Ct. 1861, 60 L. Ed.2d 447 (1979) (pretrial detainees)). The Fourteenth Amendment requires the government to do more than provide the "minimal civilized measure of life's necessities," Rhodes, 452 U.S. at 347, 101 S. C t. 2392, for non-convicted detainees. Rather, "due process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed." Jackson v. Indiana, 406 U.S. 715, 738, 92 S. Ct. 1845, 32 L. Ed.2d 435 (1972).
>
> The case of the individual confined awaiting civil commitment proceedings implicates the intersection between two distinct Fourteenth Amendment imperatives. First, "[p]ersons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." Youngberg, 457 U.S. at 321-22, 102 S. Ct. 2452. Second, when the state detains an individual on a criminal charge, that person, unlike a criminal convict, "may not be punished prior to an adjudication of guilt in accordance with due process of law." Bell, 441 U.S. at 535, 99 S. Ct. 1861 (emphasis added); see also Demery v. Arpaio, 378 F.3d 1020, 1029 (9th Cir.2004) ("[T]he Fourteenth Amendment prohibits all punishment of pretrial detainees."). As civil detainees retain greater liberty protections than individuals detained under criminal process, see Youngberg, 457 U.S. at 321-24, 102 S. Ct. 2452, and pre-adjudication detainees retain greater liberty protections than convicted ones, see Bell, 441 U.S. at 535-36, 99 S. Ct. 1861, it stands to reason that an individual detained awaiting civil commitment proceedings is entitled to protections at least as great as those afforded to a civilly committed individual and at least as great as those afforded to an individual accused but not convicted of a crime.

* * *

/////

1    Finally, we have held in <u>Oregon Advocacy Center v. Mink</u>,
     322 F.3d 1101 (9th Cir.2003), that the Eighth Amendment's
2    "deliberate indifference" standard of culpability does not apply in
     the context of an incapacitated criminal defendant's Fourteenth
3    Amendment challenge to conditions of confinement. <u>Id.</u> at 1120-
     21. If an incapacitated criminal defendant need not prove
4    "deliberate indifference" to state a substantive due process claim,
     then neither should a civil detainee, who retains greater liberty
5    protections than his criminal counterpart. <u>Youngberg</u>, 457 U.S. at
     321-24, 102 S. Ct. 2452.
6
         In sum, a civil detainee awaiting adjudication is entitled to
7    conditions of confinement that are not punitive. Under <u>Bell</u> and
     our circuit precedent, a restriction is "punitive" where it is intended
8    to punish, or where it is "excessive in relation to [its non-punitive]
     purpose," <u>Demery</u>, 378 F.3d at 1028 (citation and internal
9    quotation marks omitted), or is "employed to achieve objectives
     that could be accomplished in so many alternative and less harsh
10   methods," <u>Hallstrom</u>, 991 F.2d at 1484 (citation and internal
     quotation marks omitted). With respect to an individual confined
11   awaiting adjudication under civil process, a presumption of
     punitive conditions arises where the individual is detained under
12   conditions identical to, similar to, or more restrictive than those
     under which pretrial criminal detainees are held, or where the
13   individual is detained under conditions more restrictive than those
     he or she would face upon commitment. Finally, to prevail on a
14   Fourteenth Amendment claim regarding conditions of
     confinement, the confined individual need not prove "deliberate
15   indifference" on the part of government officials.

16   <u>Jones v. Blanas</u>, 393 F.3d 918, 931, 933 (9th Cir. 2004).[6]  <u>See also</u> <u>Hydrick v. Hunter</u>, 500 F.3d

17   978, 987 (9th Cir. 2007) ("While excessive force claims by prisoners are reviewed under the

18   Eighth Amendment's malicious and sadistic standard, the more generous Fourteenth Amendment

19   standard applies to those who are civilly confined."), <u>summarily reversed on other grounds by</u>

20   <u>Hunter v. Hydrick,</u>___ U.S. ___, 129 S. Ct. 2431 (2009); <u>Andrews v. Neer</u>, 253 F.3d 1052, 1061

21

22       [6] With respect to pretrial detainees, for instance, the Due Process Clause of the
     Fourteenth Amendment protects the detainee from the use of excessive force that amounts to
23   punishment. <u>Graham v. Connor</u>, 490 U.S. 386, 395 n. 10 (1989) (citing <u>Bell v. Wolfish</u>, 441
     U.S. 441 U.S. 520, 535-39 (1979)). "A challenged action which is reasonably related to a
24   legitimate government objective will not, without more, constitute punishment. Conversely, a
     court may infer an intent to punish when there is no such reasonable relation." <u>White v. Roper</u>,
25   901 F.2d 1501, 1504 (9th Cir.1990). In the pretrial detainee context, legitimate government
     objectives include effective management of the jail and maintenance of internal jail security and
26   order, but not retribution and deterrence. <u>Id.</u> at 1504-05.

1   (8th Cir. 2001) (Concluding that an excessive use of force claim brought by civilly committed

2   individual following his plea of not guilty by reason of insanity "should be evaluated under the

3   objective reasonableness standard usually applied to excessive force claims brought by pretrial

4   detainees."); LaBlanc v. San Bernardino County Board of Supervisors, No. CV 07-04361-TJH

5   (VBK), 2010 WL 5559683, at *9, 13 (C.D. Cal. Sept. 29, 2010) (applying the Fourth

6   Amendment "objective reasonableness" standard announced in Graham to an excessive use of

7   force claim brought as a Due Process violation by a civil detainee), report and recommendations

8   adopted, 2011 WL 66105 (C.D. Cal Jan. 5, 2011); Escobar v. Obiakor, No. EDCV 06-693-GW

9   (CW), 2010 WL 6714066, at *3 (C.D. Cal. Sept. 29, 2010) (applying the objective

10  reasonableness standard of the Fourteenth Amendment to an excessive use of force claim brought

11  by an individual who was civilly committed after pleading not guilty by reason of insanity),

12  report and recommendation adopted, 2011 WL 1989347 (C.D. Cal. May 20, 2011); Landau v.

13  Voss, No. 1:07-CV-00815-AWI-DLB PC, 2010 WL 2791754, at *9-10 (E.D. Cal. July 14, 2010)

14  (same), report and recommendations adopted, 2010 WL 3489102 (E.D. Cal. Sept. 2, 2010); Krah

15  v. Crook, No. C 08-0038 WHA (PR), 2010 WL 519840, at *3 (N.D. Cal. Feb. 8, 2010)

16  (Although Hydrick was summarily reversed by the Supreme Court on separate grounds, there the

17  Ninth Circuit "held that sexually violent predators' excessive force claims are evaluated under

18  the more generous Fourteenth Amendment standard; if they show conduct by defendants that

19  sinks below those protections afforded prisoners under the Eighth Amendment, then they have

20  certainly shown a violation of their rights under the Fourteenth Amendment."); Short v.

21  Sazberro, No. 1:09-cv-00996-OWW-GSA PC, 2009 WL 5110676, at *3 (E.D. Cal. Dec. 18,

22  2009) (Under the Fourteenth Amendment, the objective reasonableness standard requires the

23  court to consider whether the defendants' conduct was "objectively reasonable in light of the

24  facts and circumstances confronting them, without regard to their underlying intent or

25  motivation." ) (citing Lolli v. County of Orange, 351 F.3d 410, 415 (9th Cir. 2003)).

26  /////

1    In light of his undisputed status as a civil detainee at the time of the incident

2  alleged in his complaint, it is this standard that governs plaintiff's excessive use of force claim.

3  III.  California's Government Claims Act

4    California's Government Claims Act provides that "no suit for money or damages

5  may be brought against a public entity on a cause of action for which a claim is required to be

6  presented . . . until a written claim therefor has been presented to the public entity and has been

7  acted upon by the board[.]"  Cal. Gov't Code § 945.4.  The Act also requires that "[w]hen

8  defendants are public employees, the plaintiff must first submit a written claim to the public

9  entity that employs them before filing a lawsuit seeking monetary damages for violations of

10  California law."  Dennis v. Thurman, 959 F. Supp. 1253, 1264 (C.D. Cal. 1997) (citing Cal.

11  Gov't Code § 945.4 & 950.2).  "The filing of a claim is a condition precedent to the

12  maintenance of an action under state law and an integral part of the cause of action."  Id. (citing

13  Karim–Panahi v. Los Angeles Police Dept., 839 F.2d 621, 627 (9th Cir.1988) (Plaintiff's

14  "pendant state law tort claims against both the individual and public entity defendants are barred

15  unless he presented them to the City and LAPD before commencing suit."))  Such claim must be

16  filed within six months of the conduct alleged in the cause of action.  Cal. Gov't Code §

17  911.2(a).  Such a claim against a county employee must be filed with the County Board of

18  Supervisors.  See Player v. County of San Bernardino, No. EDCV 10-0409-AG (JEM), 2012 WL

19  1658912, at *5 (C.D. Cal. April 12, 2012) (concluding that plaintiff's tort claim was barred since

20  he had failed to file a claim with the County Board of Supervisors within the specified period of

21  time); Windham v. Borden, No. EDCV 07-0779-RSWL (JEM), 2010 WL 773636, at *6-7 (C.D.

22  Cal. March 3, 2010) (concluding that plaintiff's state law tort claims were barred because he had

23  failed to present his claim for damages to the Clerk of the County Board of Supervisors).

24  /////

25  /////

26  /////

**ANALYSIS**

I.  Excessive Force Claim

As explained above, defendant Bryant asserts that he accidentally closed the hatch door was on plaintiff's finger.  The undisputed facts are that defendant Bryant was making eye contact with plaintiff while the hatch was being closed.  In his declaration, defendant Bryant states under penalty of perjury as follows :

> When I arrived at the cell occupied by Fisher to provide him lunch that day, I opened the food tray port hatch door and passed him the meal tray containing the food prepared for that meal and a carton of milk.  Fisher  took the food tray through the hatchway.  I then looked up through the window on the door at Fisher's face.  Prior to shutting the door, Fisher did not say anything to me.  I did not see him attempting to hand anything back through the hatchway. Prior to June 14, 2010, I do not recall Fisher ever attempting to return a carton of milk when meals were served to him.  I did not anticipate that he would attempt to hand back the carton of milk provided on his tray, and Fisher did not tell me that he did not want the milk.
>
> While still looking at Fisher's face, I closed the food tray port hatch door.  I do not recall noticing any difficulty in closing the door or any obstruction to the door shutting normally.
>
> * * *
>
> I did not shut the hatch door on his finger intentionally.  At that time, Fisher did not notify me he was injured in any way.

(Doc. No. 25-2 at 2-3.)

At his deposition in this action, plaintiff too testified that defendant Bryant was not looking at the hatch door when he closed it.

> Q [Defendant's Counsel].  Were you looking at Officer Bryant just before your finger got hurt?

/////

/////

/////

/////

/////

A [Plaintiff].  I don't remember.  I don't recall what I was looking at.  I know I as looking out the window.[7]

Q.  Okay.  Was he looking in the window at you, or was he turned one direction or another?

A.  I don't recall.

Q.  All right.  Was he - -

A.  I know at one point we did make eye contact.

Q.  Before or after your finger was hurt?

A.  After.

Q.  Okay.  So he wasn't looking at your face at the time that he was closing the door; correct?

A.  Yeah.  Because when he - - when he came up and slammed the food port, he was looking right at me.

Q.  So he was looking at your face at the time that he closed the food port?

A.  Yeah.  When he slammed the food port, he was looking right at me like I'm looking at you.

Q.  He was making eye contact with you - -

A.  Yeah.

(Doc. No. 25-3 at 19-20.)

Defendant Bryant's report, which was prepared immediately following the incident, also states that he was unaware that the hatch door had been closed on plaintiff's finger.  See Doc. No. 25-2 at 7.  In his opposition to the pending motion, plaintiff concedes that defendant Bryant may not have intended to harm him, but argues that the defendant was

/////

---

[7]  In his declaration, defendant Bryant explains that the port hatchway is at waist-level on the cell door and that "there is a window approximately one foot above the top of the food port hatchway.  The window is approximate[ly] one and one-half feet in height and approximately four or five inches in width."  (Doc. No. 25-2, ¶¶ 3-4 at 2.)  A photograph depicting the height of the hatch door is attached to defendant Bryant's declaration.  (Doc. No. 25-2, Ex. A.)

1  negligent in failing to look at the opening before he closed the hatch door.[8]  Thus, plaintiff

2  essentially acknowledges that there is no evidence suggesting that defendant Bryant had the

3  intent to cause him harm or inflict punishment upon him.  Instead, plaintiff merely argues that

4  defendant Bryant was negligent and should have been more observant or cautious before closing

5  the hatch door.  Even if the evidence before the court established that defendant Bryant was

6  negligent in his closing of the hatch door, that would not support a claim that plaintiff was

7  subjected to punitive conditions or excessive force of any kind in violation of his Due Process

8  rights under the Fourteenth Amendment.  Jones, 393 F.3d at 933.

9          The undersigned is aware that the Ninth Circuit has cautioned lower courts to take

10  care in deciding excessive force cases on summary judgment.  See Santos v. Gates, 287 F. 3d

11  846, 853 (9th Cir. 2002) ("Because [the excessive force inquiry] nearly always requires a jury to

12  sift through disputed factual contentions, and to draw inferences therefrom, we have held on

13  many occasions that summary judgment or judgment as a matter of law in excessive force cases

14  should be granted sparingly.")  Notably, plaintiff has presented no evidence at summary

15  judgment that he in any way attempted to made defendant Bryant aware that his finger was in the

16  food port, that he requested that the port door remain open so that he could return the carton of

17  milk, that defendant Bryant held any animosity towards plaintiff, or that there were prior

18  incidents involving defendant Bryant reflecting an escalating hostility on his part toward plaintiff.

19  See Gamble v. Whipple, No. CV 07-0908-PHX-GMS (LOA), 2010 WL 334632 (D. Ariz. Jan.

20  21, 2010) (denying defendant's motion for summary judgement on excessive force claim where

21  the plaintiff alleged that he asked the defendant officer to let him get his legs in the car before the

22

23          [8]  In this regard, plaintiff states: (1) "Plaintiff contends that defendant may not have
intentionally closed the door on his finger, but the act as evidenced by failure of defendant to
24  make sure there was no obstruction present prior to closing the hatch door constitutes neglect on
his part."  Doc. No. 28 at 3; (2) "Plaintiff agrees there may not have been any malicious or
sadistic intent on the part of the defendant, but does claim that this standard is not necessarily
25  applicable to plaintiff."  (Id. at  5); and "Defendant has admitted that he did not intentionally
cause plaintiff harm, however, he was clearly reckless in not making sure that plaintiff had
26  nothing obstructing the closure of the food port door."  (Id. at 11).

defendant uttered a racial slur and slammed the door on his left ankle); Dennis v. Huskey, No. CIV S-05-0102 FCD EFB P, 2008 WL 413772, at * 6 (E.D. Cal. Feb. 13, 2008) (recommending denial of defendant's summary judgment motion where plaintiff set forth detailed allegations in his verified complaint that the defendant guard was angry with the plaintiff for assaulting another guard, verbally abused plaintiff and placed plaintiff's lunch on the food port and waited until he reached for it before slamming it on plaintiff's fingers), report and recommendation adopted 2008 WL 780685 (E.D. Cal. Mar. 20, 2008).

In light of plaintiff's unique status as a civil detainee, the court finds the case of Martin v. Benson, CIV No. 09-195 (DSD/RLE), 2010 WL 2925116 (D. Minn. June 14, 2010), findings and recommendations adopted, 2010 WL 2925104 (D. Minn. July 21, 2010), aff'd 407 Fed. Appx. 986 (8th Cir. Feb. 8, 2011) to be instructive.  There, as here, the plaintiff had been civilly committed.  He brought a civil rights action alleging that the defendant security counselors violated his constitutional rights by using excessive force while extracting him from his room and in using hand and leg cuffs when he became uncooperative.  In recommending that summary judgment be granted in favor of defendants the court observed:

> Finally, and most importantly, we have scoured the Record in search of evidence showing that Youngs acted with a culpable state of mind, but no such evidence can be found.  The Plaintiff has not identified any evidence suggesting that Youngs wanted to hurt the Plaintiff.  Notably, Youngs did not punch, hit or kick the Plaintiff, nor did he use any type of weapon against the Plaintiff.  Cf., Wilkins v. Gaddy, supra at 1179 (prisoner-plaintiff "alleged that he was punched, kicked, kneed, choked and body-slammed").  Similarly, there is no evidence showing that Youngs prolonged the handcuffing process any longer than necessary; there is no evidence that Youngs said anything, or did anything, that reflected any anger or hostility toward the Plaintiff; there is no evidence that Youngs held any malice toward the Plaintiff; there is no evidence that Youngs had any desire to retaliate against the Plaintiff for any reason; and there is no evidence that Youngs continued to use any force against the Plaintiff after he completed his handcuffing assignment.

> Furthermore, there is no evidence suggesting that Youngs was even aware that he was harming the Plaintiff.  In fact, the Record shows that even the Plaintiff, himself, did not realize he

1    was being harmed.  See, Martin Aff., supra at p. 4 ¶ 11; Plaintiff's
     Memorandum, supra at p. 4 ("Plaintiff was not immediately aware
2    he had suffered any injuries and declined to talk to a nurse.").  If
     the Plaintiff did not know he was being harmed, we do not see how
3    Youngs could have known.

4         In sum, the Plaintiff has not presented any evidence that
     would allow a reasonable juror to find that Youngs acted
5    "maliciously and sadistically for the very purpose of causing harm"
     to the Plaintiff.

6

7    Martin, 2010 WL 2925116, at *11.

8         The same is true here.  Based upon the undisputed evidence before the court on

9    summary judgment, the undersigned finds that plaintiff has failed to come forward with any

10   evidence in support of an essential element of his claim under the Fourteenth Amendment - i.e.

11   that defendant Bryant intentionally closed the hatch door on his finger with the purpose of

12   improperly punishing plaintiff by causing him harm.  The undersigned also finds that defendant

13   Bryant has established that his conduct in shutting the hatch door was objectively reasonable.

14   The evidence presented by defendant Bryant establishes that he was making eye contact with

15   plaintiff when he closed the door, that he did not see plaintiff's finger in the port opening as he

16   closed the door, and that he did not hear or see plaintiff attempting to return the milk carton.

17   Plaintiff has not met his burden of producing any competent evidence identifying a genuine

18   material issue of fact.  An accidental act, even one committed negligently, simply cannot serve as

19   the basis for a violation of the protection provided under the Fourteenth Amendment to those

20   civilly committed.  Here, the undisputed evidence before the court reflects nothing more than a

21   mere accident.[9]

22

23        [9]  In light of this conclusion, the undersigned need not address defendant Bryant's
     argument that he is entitled to summary judgment on qualified immunity grounds.  However, it
24   would appear that in light of the evidence before the court a reasonable deputy in defendant
     Bryant's position would have believed that his closing of the hatch door under these
25   circumstances was lawful.  See Whitley v. Albers, 475 U.S. 312, 320-21 (1986); Hudson v.
     McMillian, 503 U.S. 1, 7 (1992); Luchtel v. Hagemann, 623 F.3d 975, 983 n. 3 (9th Cir. 2010);
26   Marquez v. Gutierrez, 322 F.3d 689, 693 (9th Cir. 2003).

1        As noted at the outset, plaintiff specifically brought his excessive use of force

2    claim under the Eighth Amendment and declined the court's invitation to clarify the

3    constitutional basis for his claim.  Nonetheless, defendant Bryant would still be entitled to

4    summary judgment in his favor were plaintiff a convicted prisoner and the more demanding

5    Eighth Amendment standard was applied to his claim.  "When prison officials use excessive

6    force against prisoners, they violate the inmates' Eighth Amendment right to be free from cruel

7    and unusual punishment." Clement v. Gomez, 298 F.3d 898, 903 (9th Cir.2002).  "Force does

8    not amount to a constitutional violation in this respect if it is applied in a good faith effort to

9    restore discipline and order and not 'maliciously and sadistically for the very purpose of causing

10    harm.'" Id. (quoting Whitley v. Albers, 475 U.S. 312, 320-21 (1986)).

11        Again, here plaintiff has not presented any evidence from which one could infer

12    that defendant Bryant intended to subject plaintiff to punishment or force, let alone that

13    defendant Bryant acted maliciously and sadistically for the very purpose of causing plaintiff

14    harm.[10]  See Peters v. City of Huron, No. 1:08-CV-321 AWI SMS, 2009 WL 4048684, at *11-12

15    (E.D. Cal. Nov. 20, 2009) (granting defendant's motion for summary judgment when defendant

16    claimed that he did not use any force during the arrest and plaintiff failed to present any evidence

17    or description as to the quantum of force used, nor details regarding how defendant allegedly

18    caused plaintiff to fall).

19    /////

20

21        [10]  Plaintiff's allegation that his finger was broken is unsupported by any evidence.
Moreover, the core judicial inquiry in considering  an excessive use of force claim is "not

22    whether a certain quantum of injury was sustained, but rather 'whether force was applied in a
good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause

23    harm.'"  Wilkins v. Gaddy, ___ U.S. ___, 130 S. Ct. 1175, 1178-79 (2010) (quoting Hudson v.
McMillian, 503 U.S. 1, 7 (1992).  Although, as observed in Wilkens, "[i]njury and force . . . are

24    only imperfectly correlated" (130 S. Ct. at 1178), the evidence before the court on summary
judgment indicates only that after the incident plaintiff's finger was found to be "slightly red and

25    bruised" and jail medical staff suggested that ice be applied to address and swelling that might
occur.  (Doc. no. 25-2, Ex. B.)  Finally, the vague allegation in plaintiff's complaint that after the

26    incident defendant Bryant made a joke about it, is not sufficiently specific to call for any
inference that at the time of the incident, defendant Bryant intended to harm plaintiff.

1    For all the reasons set forth above, the court will recommend that defendant

2  Bryant be granted summary judgment in his favor with respect to plaintiff's claim that he was

3  subjected to the excessive use of force in violation of his constitutional rights when his finger

4  was caught within the hatch door as it was closed.  See White v. Roper, 901 F.2d 1501, 1505 (9th

5  Cir. 1990) (holding that summary judgment is appropriate "'if all reasonable inferences defeat

6  the plaintiff's claims).

7  III.  State Negligence Claim

8    As previously indicated, in order for plaintiff to proceed with his state tort cause

9  of action for negligence, he was required to submit a claim to the Butte County Board of

10 Supervisors within six months after the incident in question occurred.  Plaintiff's arguments that

11 California's Government Claims Act does not apply to him are unpersuasive.  See

12 Karim–Panahi, 839 F.2d at 627; Dennis, 959 F. Supp. at 1264; Player, 2012 WL 1658912, at *5;

13 Windham, 2010 WL 773636, at *6-7.  Here, the evidence before the court, including plaintiff's

14 own deposition testimony, establishes that he did not file the required claim with Butte County.

15 See Doc. No. 25-3 at 8.  Plaintiff having failed to comply with the requirements of California's

16 Government Claims Act, defendant Bryant's motion for summary judgment with respect to

17 plaintiff's negligence claim brought under state law should be granted as well.

18                                        **CONCLUSION**

19    In accordance with the above, IT IS HEREBY RECOMMENDED that:

20    1.  Defendant's February 24, 2012 motion for summary judgment (Doc. No. 25)

21 be granted; and

22    2.  This action be dismissed.

23    These findings and recommendations are submitted to the United States District

24 Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-

25 one days after being served with these findings and recommendations, any party may file written

26 objections with the court and serve a copy on all parties.  Such a document should be captioned

"Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: August 8, 2012.

DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:4
fish2311.57final